IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 39074

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 599 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 26, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSEPH PAUL MOBLEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Stephen W. Drescher, District Judge.

Judgment of conviction for felony domestic battery in the presence of a child, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Joseph Paul Mobley appeals from the judgment of conviction entered upon the jury verdict finding him guilty of felony domestic battery in the presence of a child, Idaho Code §§ 18-903, 18-918(3)(b), 18-918(4).

I.

FACTUAL AND PROCEDURAL BACKGROUND

Mobley was charged with felony domestic battery in the presence of a child and attempted strangulation. Mobley's first trial ended in a mistrial after the jury was unable to come to a unanimous verdict on any of the charges. During jury deliberations in the second trial, the jury sent a message to the district court stating, "We're split on one of the charges. How do we proceed with the charge we're split on?" The district court responded by stating, "Reread Instruction 28, Paragraph 6, and continue to deliberate."

1

The jury found Mobley guilty of felony domestic battery in the presence of a child and acquitted him of attempted strangulation. The district court imposed a unified term of four and one-half years with one and one-half years determinate. The district court suspended the sentence and placed Mobley on probation for three years. Mobley timely appeals.

## II.

## ANALYSIS

Mobley claims that the district court's response to the jury was a "dynamite instruction" that violated his rights to due process. "The due process clauses of the state and federal constitutions guarantee an accused a trial by a fair and impartial jury." *State v. Timmons*, 141 Idaho 376, 377, 109 P.3d 1118, 1119 (Ct. App. 2005); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct. App. 1998). "If jury deliberations are tainted by undue pressure, this constitutional guarantee is violated." *Timmons*, 141 Idaho at 377, 109 P.3d at 1119; *Lee*, 131 Idaho at 605, 961 P.2d at 1208. Idaho courts have found undue pressure where deadlocked juries were given a "dynamite instruction." *Timmons*, 141 Idaho at 377, 109 P.3d at 1119. "A dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position." *State v. Gomez*, 137 Idaho 671, 676, 52 P.3d 315, 320 (2002) (citing *State v. Martinez*, 122 Idaho 158, 162, 832 P.2d 331, 335 (Ct. App. 1992)). "In order to avoid jury coercion, Idaho has adopted a 'blanket prohibition against dynamite instructions.'" *Gomez*, 137 Idaho at 676, 52 P.3d at 320 (quoting *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988)).

Mobley did not object below to the district court's response to the jury; therefore, he must establish fundamental error. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the

2

need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Mobley initially argues that the fundamental error framework does not apply because the district court allegedly responded to the jury without giving counsel the opportunity to make a contemporaneous objection. After receiving a question from the jury, the district court went on the record and stated:

| COURT: | All right. We're again taking up 2010-15105, and the counsel are present. And the jury has sent out a question that says, "We're split on one of the charges. How do we proceed with the charge we're split on?" The court has replied, "Reread Instruction 28, Paragraph 6, and continue to deliberate." If you have any objections to that, make your record. |
| [STATE]: | No objection from the State, Judge. |
| [DEFENSE COUNSEL]: | No objection, Your Honor. |

Mobley argues that the district court's language indicates that the court already sent its response to the jury by the time the court asked the parties for objections. Therefore, he contends he was unable to contemporaneously object to the response. The State argues that the district court consulted with counsel before having the response delivered to the jury. The State points to the court minutes for support. The court minutes indicate that the district court received the note from the jury and then informed counsel of its intended response. The court minutes state: "In answer to the Court's inquiry, each of counsel indicated they had no objection to the Court's response to the question of the jury. The Court provided the written response to the Bailiff for delivery to the jury." Based on the foregoing, we determine that Mobley had an opportunity to object to the district court's response but failed to do so. Accordingly, Mobley must show that the district court's alleged error was a fundamental error.[1]

---

[1] Mobley argues that to the extent the transcript and court minutes are inconsistent, the transcript should control because it is a certified document of the proceedings and is entitled to a presumption of correctness. We discern no inconsistencies between the transcript and the court minutes.

Under the fundamental error framework, Mobley must first show that the district court's response to the jury violated an unwaived constitutional right. In *State v. Pullin*, 152 Idaho 82, 266 P.3d 1187 (Ct. App. 2011), this Court stated:

> The United States Supreme Court has held that in order for a petitioner to be denied a constitutional right through the use of a dynamite instruction (or "supplemental charge"), the instruction must be coercive. *Lowenfield v. Phelps*, 484 U.S. 231, 239-41 (1988). In that case, the Supreme Court rejected a claim that giving a dynamite instruction was unconstitutional. In doing so, the Supreme Court rejected several arguments based on its own precedents, because those precedents had been based on the Court's supervisory powers over federal courts rather than on the Constitution. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (holding that an instruction given after the jury informed the judge that it was unable to reach a verdict, and the judge told the jury it had to reach a decision, was improper after relying on other cases involving the exercise of supervisory powers, and not relying on constitutional grounds); *Brasfield v. United States*, 272 U.S. 448, 449-50 (1926) (holding that the judge's inquiry into the jury's numerical division was improper due to the potential dangers of jury polling by relying on the Court's supervisory powers). While stating that it was mindful that the jury returned with its verdict soon after receiving the supplemental instruction, suggesting the possibility of coercion, the Supreme Court concluded that because defense counsel did not object to the supplemental instruction, it indicated that the potential for coercion that the defendant argued on appeal was not apparent when the instruction was given. Therefore, the supplemental instruction was not coercive in such a way that the defendant was denied a constitutional right. *Lowenfield*, 484 U.S. at 239-41.
>
> Idaho law is consistent with federal law, although it provides greater protection to the defendant. To avoid the possibility of jury coercion, the Idaho Supreme Court has adopted a "blanket prohibition" against the use of such instructions. *State v. Gomez*, 137 Idaho 671, 676, 52 P.3d 315, 320 (2002); *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988). However, in prohibiting the use of dynamite instructions altogether, the Supreme Court specifically disclaimed any intent to prohibit instructions directing further deliberations where the jury is not definitely deadlocked:
>
>> Proscribing the use of dynamite instructions does not restrict a trial court . . . from polling the individual jurors, and depending on the responses and appearances, then when appropriate guiding them toward another appropriate period of deliberation. This assumes, of course, that the jurors do not declare themselves deadlocked.
>> *Flint*, 114 Idaho at 813, 761 P.2d at 1165.

*Pullin*, 152 Idaho at 84-85, 266 P.3d at 1189-90.

4

In the instant case, the district court responded to the jury's question by directing the jury to reread paragraph six of jury instruction twenty-eight and "continue to deliberate." Paragraph six of jury instruction twenty-eight reads:

> Consult with one another. Consider each other's views, and deliberate with the objective of reaching an agreement, if you can do so without disturbing your individual judgment. Each of you must decide this case for yourself; but you should do so only after a discussion and consideration of the case with your fellow jurors.

Mobley contends that singling out paragraph six without referring to the instructions as a whole "likely left the jurors with the impression that, despite the split of opinion on the jurors as to guilt or innocence, they were absolutely required to continue to deliberate until a verdict was actually reached."[2] Further, Mobley argues that this paragraph, accompanied by the district court's direction to "continue to deliberate," exhorted members of the jury to reconsider their views. We disagree.

As discussed above, "[a] dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position." *Gomez*, 137 Idaho at 676, 52 P.3d at 320 (citing *Martinez*, 122 Idaho at 162, 832 P.2d at 335). Here, the jury was "split." There is no indication that a minority view existed or that a single juror was holding out. The response of the district court did not exhort any members of the jury to reconsider their positions or to surrender their personal beliefs. Contrarily, paragraph six instructs the jury to reach an agreement "if you can do so without disturbing your individual judgment" and to "decide this case for yourself." Additionally, we note that instruction twenty-eight, including paragraph six, is identical to the pattern jury instruction, Idaho Criminal Jury Instruction 204. The Idaho Criminal Jury Instructions were presented to and approved by the Idaho Supreme Court. *State v. Harris*, 136 Idaho 484, 485, 36 P.3d 836, 837 (Ct. App. 2001).

Moreover, the amount of time the jury spent deliberating after receiving the response from the court suggests that the court's response was not coercive. The jury spent one and a half

---

[2] Mobley argues that it was especially damaging that the district court did not refer the jury to paragraph seven of instruction twenty-eight. Paragraph seven states, "However, none of you should surrender your honest opinion as to the weight or effect of evidence or as to the innocence or guilt of the defendant because the majority of the jury feels otherwise or for the purpose of returning a unanimous verdict."

hours deliberating prior to the court's response and forty-nine minutes deliberating after the response. Reaching a verdict in forty-nine minutes after being split on an issue is not evidence of coercion in this case. *See Pullin*, 152 Idaho at 86, 266 P.3d at 1191 (finding that thirty minutes of deliberation after the court responded to the jury did not constitute coercion "because the original deliberations before the jury spoke to the court were not particularly lengthy in comparison at only an hour and a half"). Further, the district court's response did not establish a deadline for reaching a verdict, did not make reference to the time or expense taken to try the case, and did not make reference to the numerical division of the split. *See Timmons*, 141 Idaho at 378, 109 P.3d at 1120 (where these factors contributed to a finding that the district court's response was not coercive). Based on the foregoing, we conclude that Mobley has failed to establish that he was denied an unwaived constitutional right. Accordingly, he is unable to demonstrate that the district court's response constituted fundamental error.[3]

## III.

## CONCLUSION

Mobley has failed to demonstrate reversible error. Accordingly, his judgment of conviction is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

[3] Although we conclude that Mobley failed to establish fundamental error, we note that the better way to address a split jury is to poll the individual jurors and, if the responses indicate that the jury is deadlocked to declare a mistrial. However if the jury is not deadlocked, the court can, depending on the responses and appearance of the jury and when appropriate, guide the jury toward another period of deliberation. *Flint*, 114 Idaho at 813, 761 P.2d at 1165.